# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KRISTEN ZBIKOWSKI OBARTUCH, and HANNAH LEIGH BARBOUR, | ) ) ) | |
| Plaintiffs, | ) ) | 18 C 280 |
| v. | ) ) | |
| THE MEADOWS OF WICKENBURG, INC., | ) ) ) | Judge John Z. Lee |
| Defendant. | ) ) | |

## MEMORANDUM OPINION & ORDER

Kristen Obartuch and her daughter, Hannah Barbour, received a package from Obartuch's husband that was not intended for them and the contents of which they would rather not have read. At the time the package was sent, he was a resident of The Meadows of Wickenburg, Inc. ("The Meadows"), a rehabilitation and drug treatment facility. Believing that The Meadows was to blame for the error, Obartuch and Barbour have sued The Meadows alleging negligence and negligent infliction of emotional distress.

The Meadows has filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) or for failure to state a claim pursuant to Rule 12(b)(6); in the alternative, it moves to transfer the action to the District of Arizona pursuant to 28 U.S.C. § 1404. For the reasons provided, the Court denies the motion to dismiss pursuant to Rule 12(b)(2), denies the motion to transfer, and grants the motion to dismiss pursuant to Rule 12(b)(6) [21]. To the

extent that Plaintiffs believe they can amend their complaint in a manner consistent with this opinion, they are granted leave to do so within twenty-one days.

## **Factual Background**[1]

Obartuch and Barbour reside in Chicago, Illinois. Compl. ¶¶ 1–2, ECF No. 1. The Meadows is a rehabilitation facility and drug treatment center located in Wickenburg, Arizona, and incorporated in Delaware. *Id.* ¶¶ 4–5.

On January 1, 2016, The Meadows admitted Obartuch's husband as a patient. *Id.* ¶ 8. The facility maintains a website which, among other things, explains that it "consider[s] the entire family to be [its] client and recognize[s] their need for recovery as well. Family involvement in the recovery process is crucial, and [The Meadows] devote[s] set times for family visits, including lectures and workshops. Family dynamics often play[ ] a role in addiction, so it's important to provide a space for the family to effectively communicate to heal." *Id.* ¶ 11.

When Obartuch's husband was admitted to The Meadows, he and Obartuch "signed documents provided by The Meadows regarding treatment, privacy policies, rules and/or other similar documents including but not limited [to] 'The Meadows Family Pledge.'" *Id.* ¶ 28.

During the time that Obartuch's husband resided there, The Meadows assisted its patients when they wanted to send mail to persons outside the facility. *Id.* ¶ 12. The Meadows required patients to write the name and address of their

---

[1] When reviewing a motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in favor of Plaintiffs. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

intended recipients on shipping labels and to present the labels and packages to its employees to be placed in the mail. *Id.* On or about January 14, 2016, Obartuch's husband presented a Federal Express envelope to Sylvia Madueno, an employee of The Meadows. *Id.* ¶¶ 14–16. Obartuch's husband had addressed the package to "Faye Amponin" and provided Amponin's address. *Id.* At the time, Obartuch's husband and Amponin were engaged in an extra-marital affair. *Id.* at ¶ 18.

Instead of sending the package to Amponin, however, Madueno prepared a Federal Express label with Obartuch's name and home address. *Id.* ¶ 17. Madueno then placed this label over the one Obartuch's husband had addressed to Amponin and sent the package. *Id.*

Soon thereafter, Plaintiffs received the package. *Id.* ¶ 18. Upon inspecting the package, Plaintiffs discovered the original address label that Obartuch's husband had written on the package. *Id.* ¶ 19. Until that point, neither Obartuch nor her daughter were aware of Amponin and allege that learning of the affair in this manner caused them "severe mental, emotional harm and physical injuries." *Id.* ¶¶ 18–19, 29–35.

Plaintiffs' complaint raises claims for negligence (Counts I & II) and negligent infliction of emotional distress (Counts III & IV). The Meadows has moved to dismiss the complaint for lack of personal jurisdiction or failure to state a claim; in the alternative, it requests that the Court transfer this case to the District of Arizona.

## Discussion

### I. Motion to Dismiss for Lack of Personal Jurisdiction

#### A. Legal Standard

A court that lacks personal jurisdiction over a defendant must dismiss the case as to that party. *See* Fed. R. Civ. P. 12(b)(2). If a defendant moves to dismiss pursuant to Rule 12(b)(2), it places the burden on the plaintiff to demonstrate that the court has personal jurisdiction over the defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In making this determination, the Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983)). "The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held." *Purdue*, 338 F.3d at 782. When there is no dispute of material fact and a court rules solely based on the submission of written materials, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). The Court can, however, consider affidavits and other supporting materials and must resolve any conflicts in the affidavits and supporting materials in the plaintiff's favor. *Id.* at 782–83.

When considering a Rule 12(b)(2) motion, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018) (quoting *Walden v.*

*Fiore*, 571 U.S. 277, 283 (2014)). Here, "[t]he Illinois long-arm statute requires nothing more than the standard for federal due process: that the defendant have sufficient contacts with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017)). And, as noted, it is the plaintiff's burden to establish a *prima facie* showing of jurisdiction. *Id.*

**B. Analysis**

The Meadows seeks dismissal of Plaintiffs' complaint on the basis that the Court lacks general or specific personal jurisdiction over it. Although Plaintiffs do not argue that The Meadows is subject to general jurisdiction in Illinois, they contend that they have made a *prima facie* showing as to specific jurisdiction.

The key question in evaluating specific jurisdiction is whether it is "fair and reasonable to call the defendant into the state's courts to answer the plaintiff's claim." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010). To answer this question in the affirmative, a defendant's contacts with the forum state must directly relate to or arise out of the challenged conduct. *E.g., John Crane*, 891 F.3d at 695–96 (citing *Brook*, 873 F.3d at 552). This means that the "contacts should either bear on the substantive legal dispute between the parties or relate to the operative facts of the case." *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009). Moreover, "[t]he exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492–93 (7th Cir. 2014). The relevant concerns in this respect

5

are "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficiently resolving controversies, and the shared interest of the states in furthering fundamental substantive social policies." *GoDaddy*, 623 F.3d at 432–33.

The Meadows argues that it is not subject to personal jurisdiction in Illinois because it does not do business in Illinois and its only contact with Illinois arose from Obartuch's husband's unilateral decision to attend its treatment facility in Arizona. It explains that "other courts have found that [a] patient treated at an out-of-state facility does not subject that defendant to a cause of action in the patient's home state." Def.'s Mem. Supp. Mot. Dismiss at 7, ECF No. 22. Further, as it sees it, to the extent its contacts with Illinois might be based on the package sent erroneously by its employee, that contact is too "random, fortuitous and attenuated" to support personal jurisdiction. *Id.* at 9. Plaintiffs, for their part, contend that Madueno's voluntary act of sending the letter to them in Illinois "cannot be said to be 'random, fortuitous or attenuated.'" Pls.' Resp. Opp. Mot. Dismiss at 7, ECF No. 25.

The Court is satisfied that it has personal jurisdiction over The Meadows in this case. First, much of its argument is irrelevant to the case at hand. For instance, The Meadows contends that "jurisdiction cannot be based on interstate telephone calls, mail, or unilateral performance by the *plaintiff* within the state." Def.'s Mem. Supp. Mot. Dismiss at 7 (emphasis added). But this case does not involve any actions initiated by Plaintiffs; it involves a package allegedly sent by an employee of *The*

6

*Meadows*. Similarly, The Meadows focuses on the rule that personal jurisdiction cannot be based purely on the decision of a forum-state resident to obtain medical or other treatment at an out-of-state facility. But this case involves more than the unilateral decision of Obartuch's husband to seek treatment at The Meadows; it involves affirmative conduct by an employee of that facility.

That affirmative conduct is sufficient to establish the minimum contacts required for specific personal jurisdiction. Although "the plaintiff cannot be the only link between the defendant and the forum," contacts that the defendant itself makes with the forum will support personal jurisdiction. *Walden*, 571 U.S. at 285–86. "[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.* This is not a case in which the defendant's action had no connection to the forum state but randomly or fortuitously ended up injuring the plaintiff by virtue of the plaintiff's connections there. *See, e.g., id.* at 285–86, 288–89. Madueno mailed a package to Plaintiffs at their home in Illinois, and that package is the crux of this lawsuit. This "intentional and allegedly tortious" action was "expressly aimed" at Plaintiffs in Illinois, and Madueno necessarily would have known that the effects of her actions would be felt there. *See Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). Accordingly, it is The Meadows's "suit-related conduct," as opposed to the mere residence or unilateral conduct of Plaintiffs, that establishes the connection to Illinois. *See Walden*, 571 U.S. at 284; *see also John Crane*, 891 F.3d at 695–96 (distinguishing between a case in which communications sent to the forum state were

7

"incidental to other conduct" and a case in which communications sent to the forum state were "the basis of [the plaintiff's] claims").[2]

Further, exercising specific personal jurisdiction over The Meadows does not offend traditional notions of fair play and substantial justice. Although litigating in Illinois may be burdensome for The Meadows, other factors weigh against that burden. First, Illinois has an interest in adjudicating controversies involving injuries to Illinois citizens within the state's borders, especially those that implicate Illinois law. Additionally, Plaintiffs' interest in obtaining convenient and effective relief counsels in favor of adjudicating the dispute in Illinois, where they and their evidence are located. And because this action involves the intentional act of sending mail to an Illinois citizen, The Meadows cannot claim to be surprised to be haled into an Illinois court. *GoDaddy*, 623 F.3d at 432.

Accordingly, The Meadows's motion to dismiss for lack of personal jurisdiction is denied.

## II. Motion to Transfer Venue

### A. Legal Standard

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

---

[2] The Meadows does not argue that it is not subject to personal jurisdiction based on the actions of its employee, nor could it successfully make such an argument. *See Bentel & Co., LLC v. Schraubenwerk Zerbst GmbH*, No. 16 C 11479, 2017 WL 3278324, at *5 (N.D. Ill. Aug. 2, 2017) ("Minimum contacts sufficient for personal jurisdiction over a nonresident entity may be established through an agent of the entity.") (collecting cases).

8

Once an appropriate alternate forum is identified, a court makes a two-pronged inquiry into both convenience and the interests of justice to decide whether transfer is warranted. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The movant has the burden of establishing, "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986).

The factors relevant to the convenience inquiry include "the availability of and access to witnesses, and each party's access to and distance from resources in each forum," as well as "the location of material events and the relative ease of access to sources of proof." *Research Automation*, 626 F.3d at 978. As for the interests of justice, a court will consider "docket congestion and likely speed to trial" in each forum, "each court's relative familiarity with the relevant law," "the respective desirability of resolving controversies in each locale," and "the relationship of each community to the controversy." *Id*. The interest-of-justice inquiry "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id*. Because ruling on a motion to transfer venue requires an "individualized, case-by-case consideration of convenience and fairness," the district court is afforded broad discretion and substantial deference in weighing the factors for and against transfer. *Coffey*, 796 F.2d at 219 (internal citation and quotation marks omitted).

B.  Analysis

The Meadows seeks to transfer venue to the District of Arizona, where it is located. On balance, however, The Meadows has not met its burden of showing that litigating this case in the District of Arizona would be "clearly more convenient" for the parties and witnesses. *Coffey*, 796 F.2d at 219–20.

As an initial matter, Plaintiffs' choice of forum in the Northern District of Illinois weighs heavily against transfer. *See Research Automation*, 626 F.3d at 979. This factor carries particular weight in this case because Plaintiffs reside in the chosen forum.

The situs of material events, the relative ease of access to sources of proof, and the convenience of witnesses also weigh against transfer. The Meadows points out that its facility, employees, and any record evidence in its possession are located in Arizona. The reverse is true, however, for Plaintiffs—they are located in Illinois, as is, presumably, the package they received and any other evidence of their injuries. What is more, "[t]he convenience of employee witnesses typically is not given significant weight." *Rosman Adjustment Corp. v. Bernay*, No. 12 C 8239, 2013 WL 453197, at *3 (N.D. Ill. Feb. 6, 2013). The Court is sensitive to the fact that litigating in the Northern District of Illinois will be less convenient for employees of The Meadows who may be called as witnesses; however, litigating in the District of Arizona would be inconvenient for Plaintiffs and their witnesses. Because The Meadows points to nothing that tips these factors in its favor, the Court finds that

these factors are neutral. Ultimately, transfer of this case would "merely shift[ ] inconvenience from one party to another." *Research Automation*, 626 F.3d at 978–79.

As for the interests of justice, the Court concludes that the factors weigh in favor of retaining the case in Illinois. The Meadows has not pointed to any evidence that a resolution will be more quickly or effectively reached in Arizona as opposed to Illinois. Illinois does, however, have an interest in adjudicating controversies involving injuries to its citizens and alleged violation of its laws. Similarly, this Court's familiarity with the applicable law weighs against transfer, as each of Plaintiffs' claims are brought under Illinois law and this Court frequently applies Illinois law in diversity cases. *See Coffey*, 796 F.2d at 221. The Meadows has not pointed to any relationship that the community in Arizona has with respect to the controversy, except for the mere fact that its facility and employees are located there.

Because The Meadows has not shown that litigating in the District of Arizona would be clearly more convenient than litigating in the Northern District of Illinois, its motion to transfer venue is denied.

### III. Motion to Dismiss for Failure to State a Claim

#### A. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B.     Analysis**

The Meadows argues that Plaintiffs have not plausibly alleged that it owed a duty of care to them, and thus their claims of negligence and negligent infliction of emotional distress must be dismissed pursuant to Rule 12(b)(6). Under Illinois law, both claims require proof of a duty owed by The Meadows to Plaintiffs, a breach of that duty, and injury proximately caused by the breach. *See Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012) (negligence); *Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 29 (Ill. App. Ct. 2010) (negligent infliction of emotional distress).

The existence of a duty is a matter for the court to decide. *Vesely v. Armslist LLC*, 762 F.3d 661, 665 (7th Cir. 2014). This concept is "involved, complex, and nebulous," but essentially boils down to "whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Simpkins*, 965

N.E.2d at 1096–97 (emphasis and citation omitted). This "relationship" is determined as a matter of public policy and after consideration of four factors: (1) "the reasonable foreseeability of the injury"; (2) "the likelihood of the injury"; (3) "the magnitude of the burden of guarding against the injury"; and (4) "the consequences of placing that burden on the defendant." *Id.* at 1097. While some "special relationships" meet this standard as a matter of law, Illinois courts have "long recognized that every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Id.* (internal quotation marks and citation omitted). Additionally, Illinois courts have occasionally held that a duty owed to one person, such as a patient, may be "transferred" to a third party if that third party has a "special relationship" with the patient, such as a parent-child relationship. *See Tedrick v. Cmty. Res. Ctr., Inc.*, 920 N.E.2d 220, 230–31 (Ill. 2009) (citing *Renslow v. Mennonite Hosp.*, 367 N.E.2d 1250 (Ill. 1977)).

The Meadows argues that its duty of care to its patient, Obartuch's husband, does not transfer to Plaintiffs merely by virtue of their familial relationship. Accordingly, it contends, because it has no "special relationship" with either Obartuch or Barbour, it does not owe a duty of care to either of them. In response, Plaintiffs contend that they are not relying on a "transferred negligence" theory, but on a direct duty that The Meadows owed to them as participants in their relative's care. They point out that, according to The Meadows's website, it "consider[s] the entire family

13

to be [its] client and recognize[s] their need for recovery as well." Compl. ¶ 11. Accordingly, Plaintiffs argue, The Meadows took on a duty of care to them as well as to Obartuch's husband.

Neither the lack of a direct relationship between Plaintiffs and The Meadows, nor the statement on The Meadows's website, is conclusive as to this question. Rather, the existence of a duty in this case depends solely upon measurement of the factors identified by Illinois courts. *See Simpkins*, 965 N.E.2d at 1097. An earlier case, *O'Hara v. Holy Cross Hospital*, 561 N.E.2d 18 (Ill. 1990), provides a useful contrast. There, a non-patient mother fainted after wiping Novocain from her son's mouth at a nurse's request. *Id.* at 19. The Illinois Supreme Court determined that the hospital had taken on a duty of care to the mother by asking her to participate in the care and treatment of her son. *Id.* at 21–23. The court applied the four public-policy factors and concluded that the risk of harm from fainting became more significant once the mother was asked to participate in her son's care; that the burden of guarding against such a risk was minimal given that hospitals should not "have to enlist the aid of a nonpatient bystander"; and that it was consistent with public policy to place such a burden on the hospital. *Id.*

Here, these factors do not lead to the same outcome. As in *O'Hara*, it appears that The Meadows may have "invited" Obartuch and Barbour to "participate in the care and treatment" of their relative. *See* 561 N.E.2d at 23. But the foreseeable injury from that undertaking cannot extend to Plaintiffs' receipt of unpleasant or unwanted news in the mail. In contrast to the facts at issue in *O'Hara*, the injury the

14

Plaintiffs here suffered bears no connection to the actual treatment provided to the husband. Put another way, asking family members to participate in their relative's care has no apparent connection to the facility's actions in sending and receiving mail for the patient. Accordingly, the emotional injury that Plaintiffs suffered in this case as a result of discovering that Obartuch's husband was having an affair when The Meadows incorrectly mailed the package to them was neither reasonably foreseeable nor likely.

Additionally, the magnitude and consequences of placing such a burden on The Meadows would be great. Such an outcome would require The Meadows to supervise all contact between its patients and family members, and even to censor such communications to ensure that no hurt feelings result. That burden would be nearly insurmountable, and Obartuch and Barbour have cited no cases supporting the imposition of such a broad duty.

It is true that The Meadows undertook to send and receive mail on behalf of its patients, including Obartuch's husband. That undertaking likely imposed a duty of care to ensure that mail was not lost or sent to the wrong address. *See, e.g.*, *Flowers v. State*, No. 88-CC-0665, 1989 WL 1182012 (Ill. Ct. Cl. Oct. 11, 1989) (concluding that a state prison had breached a duty of care to safeguard and return property sent to an inmate through the mail). But that duty can only reasonably extend to the patients, not to the recipients of the mail. For example, the sender may suffer if the facility were to send sensitive information to an unintended recipient—such as appears to have happened in this case. It is not, however, reasonably foreseeable or

likely that the unintended recipient would *also* suffer separate harm as a result. What is more, avoiding harm to patients who wish to send mail is simple; it requires merely confirming mailing addresses with patients prior to sending the mail. The same is not true for recipients, who may be harmed even if the sending patient believes the address is correct. To avoid this harm, The Meadows would have to read and censor each piece of mail or even contact recipients prior to sending mail to ensure that it is wanted. Public policy does not support such a broad duty, nor have Plaintiffs cited any case law creating one.

For these reasons, the Court concludes that The Meadows owed no duty of care to Plaintiffs to protect them from being injured by discovering news about the husband that he wanted to keep from them and that they did not want to find out. Of course, the husband may have a claim against The Meadows, but his wife and daughter do not. Accordingly, Plaintiffs' complaint is dismissed for failure to state a claim.

## Conclusion

For the reasons stated herein, The Meadows's motion [21] is denied insofar as it seeks to dismiss the complaint for lack of personal jurisdiction or to transfer the case to the District of Arizona, but the motion is granted insofar as it seeks to dismiss the complaint for failure to state a claim under Rule 12(b)(6). To the extent that Plaintiffs believe they can amend their complaint in a manner consistent with this opinion, they are granted leave to do so within twenty-one days. If no amended complaint is filed, the case will be terminated as of that date.

**IT IS SO ORDERED.**     ENTERED   1/25/19

_____
**John Z. Lee**
**United States District Judge**